# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

Nos. 18-1885, 18-2027

JOHN LAVERY

Plaintiff-Appellee

v.

RESTORATION HARDWARE LONG TERM DISABILITY
BENEFITS PLAN; AETNA LIFE INSURANCE COMPANY

Defendants-Appellants

Appeal from the United States District Court
for the District of Massachusetts

Civil Action No. 1:17-CV-10321, Hon. Denise J. Casper

# BRIEF OF APPELLEE

Stephen Churchill (#30464)
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
(617) 607-3260

**Dated:** January 7, 2019

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES .................................................................... ii

STATEMENT OF THE ISSUES ............................................................ 1

STATEMENT OF THE CASE .............................................................. 1

    1. Facts ............................................................................................. 1

    2. Procedural History ..................................................................... 8

SUMMARY OF ARGUMENT ............................................................. 9

ARGUMENT ....................................................................................... 11

    1. Standard of review ................................................................... 11

    2. Aetna had a structural conflict of interest, so its decision
       must be reviewed with closer scrutiny ..................................... 12

    3. Aetna's denial of benefits based on the initial look-back period was
       arbitrary and capricious. .......................................................... 16

    4. Aetna's denial of benefits based on a new look-back period was also
       unreasonable, because it relied on a previously undisclosed change of
       plan terms and because Mr. Lavery never had an opportunity to
       respond to Aetna's reliance on those new terms. ........................ 24

    5. The district court did not abuse its discretion when ordering
       Aetna to allow Mr. Lavery's claim............................................. 30

    6. The district court did not abuse its discretion when awarding
       prejudgment interest ................................................................. 34

CONCLUSION.................................................................................... 35

CERTIFICATE OF COMPLIANCE WITH RULE 32(A)(7).............. 36

CERTIFICATE OF SERVICE .............................................................. 37

# TABLE OF AUTHORITIES

**Cases**

*Agosto-Ramos v. Puerto Rico Tel. Co.*,
   743 F. Supp. 2d 30 (D.P.R. 2010) ........................................................................ 26

*Bard v. Boston Shipping Ass'n,*
   471 F.3d 229 (1st Cir. 2006)..........................................11, 14-15, 25, 27-30

*Beauvais v. Citizens Financial Group, Inc.*,
   418 F. Supp. 2d 22 (D.R.I. 2006) ........................................................................ 32

*Buffonge v. Prudential Ins. Co. Of Am.*,
   426 F.3d 20 (1st Cir. 2005)..........................................................11, 22-23

*Coffin v. Bowater Inc.*,
   501 F.3d 80 (1st Cir. 2007)........................................................................ 26

*Cook v. Liberty Life Assur. Co. of Boston*,
   320 F.3d 11 (1st Cir. 2003)....................................................... 12, 22, 30, 32

*Denmark v. Liberty Life Assur. Co. of Boston*,
   556 F.3d 1 (1st Cir. 2009)......................................................................... 12-14

*Figueiredo v. Life Ins. Co. of North America*,
   709 F. Supp. 2d 144 (D.R.I. 2010) ........................................................................ 33

*Glista v. Unum Life Ins. Co. of Am.*,
   378 F.3d 113 (1st Cir. 2004)........................................................................ 29-30

*Gross v. Sun Life Assurance Co. of Canada*,
   2016 WL 10747783 (D.Mass. July 13, 2016) ........................................................ 33

*Hughes v. Boston Mut. Life Ins.*,
   26 F.3d 264 (1st Cir. 1994)........................................................................ 23

*Lauder v. First Unum Life Ins. Co.*,
   284 F.3d 375 (2d Cir. 2002) ........................................................................ 31

*McOsker v. Paul Revere Life Ins. Co.*,
  F.3d 586 (8th Cir. 2002) ...................................................... 22

*Metro. Life Ins. Co. v. Glenn*,
  554 U.S. 105 (2008).......................................................... 11-15

*Miller v. American Airlines, Inc.*,
  632 F.3d 837 (3d Cir. 2011) ............................................... 22-23

*Pari-Fasano v. ITT Hartford Life & Accident Ins. Co.*,
  230 F.3d 415 (1st Cir. 2000)................................................... 22

*Radford Tr. v. First Unum Life Ins. Co. of Am.*,
  491 F.3d 21 (1st Cir. 2007)............................................... 12, 34

*Saffron v. Wells Fargo & Co. Long Term Disability Plan*,
  522 F.3d 863 (9th Cir. 2008) ................................................. 30

*Terry v. Bayer Corp.*,
  145 F.3d 28 (1st Cir. 1998).................................................... 16

## Statutes & Regulations

29 U.S.C. §§ 1001 *et seq.* ....................................................... 1

29 U.S.C. § 1022(a) ............................................................... 25

29 U.S.C. § 1024(b)(1) ........................................................... 26

29 U.S.C. § 1059(a)(2) ........................................................... 15

29 C.F.R. § 2560.503-1(h)(4)(ii) ............................................... 25

## STATEMENT OF THE ISSUES

1.  Where Aetna repeatedly engaged in arbitrary and capricious reversals of its position about the proper application of the Plan's pre-existing condition clause, did the district court err when ruling that Aetna's final decision violated ERISA?

2.  After ruling that Aetna's reliance on the pre-existing condition clause was arbitrary and capricious, did the district court abuse its discretion when awarding benefits to Mr. Lavery, where Aetna's denial was based solely on that clause?

3.  Did the district court abuse its discretion when awarding prejudgment interest based on specific calculations that Aetna did not contest?

## STATEMENT OF THE CASE

**A.  Facts**

Defendant Restoration Hardware Long Term Disability Benefits Plan ("Plan") is an employee benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. (A.22). The Plan is sponsored by Restoration Hardware, Inc. ("Restoration Hardware"), which also serves as the plan administrator. (A.22). Defendant Aetna Life Insurance Company is the underwriter and claims administrator for the Plan. (A.23). For simplicity, the Defendants are referred to collectively in this brief as "Aetna."

Mr. Lavery formerly worked for Restoration Hardware and was a participant in the Plan. (A.23). He went out of work due to malignant melanoma on or about September 30, 2014. (A.23). He applied for and received short term disability

benefits. (A.23). On or about January 27, 2015, his claim for short term disability benefits was converted to a claim for long term disability benefits. (A.23).

The ultimate decision about Mr. Lavery's long term disability claim was to be made by the assigned Disability Benefits Manager. (Appellants' Brief, pp.8-9). Therese Leimback was the Disability Benefits Manager assigned to Mr. Lavery's claim. (A.968).

On or about March 21, 2015, Aetna wrote to Mr. Lavery and advised him, among other things, as follows:

> **According to the information in your file, your coverage under the Restoration Hardware, Inc. plan became effective on 06/01/2014 and you have claimed disability as of 9/30/2014. Your coverage was in effect for less than 12 consecutive months as of 9/30/2014, thus we must determine whether you received medical treatment/services, or were prescribed medication during the three month period between 3/1/2014 and 5/31/2014.**

(A.976-77) (emphasis in original). A heading on the first page of the letter said (in all caps and bold), "**NOTE: CORRECTED PERIOD FOR PRE-EXISTING REVIEW: 3/1/2014 AND 5/31/2014**." (A.976) (emphasis in original).

The so-called pre-existing condition provision ("Pre-Ex Clause") provides as follows:

> Long Term Disability Coverage does not cover any disability that starts during the first 12 months of your current Long Term Disability Coverage, if it is caused or contributed to by a 'pre-existing condition."

> A disease or injury is a pre-existing condition if, during the 3 months before the date you last became covered:

it was diagnosed or treated; or
services were received for the disease or injury; or
you took drugs or medicines prescribed or recommended by a
physician for that condition.

(A.374).

Mr. Lavery had an office visit with his primary care physician, Anthony Lopez, M.D., on April 25, 2014. (A.1272-73). He presented with a lesion on his back, and Dr. Lopez suspected the lesion could be basal cell carcinoma (a non-malignant condition), so he recommended that Mr. Lavery consult with a dermatologist. (A.1272-73). Dr. Lopez did not recommend any other actions, and he did not provide any treatment or medications. (A.1273). When Mr. Lavery was later diagnosed with malignant melanoma, Dr. Lopez was surprised; he had not discussed any treatment, recommendations, or medications for malignant melanoma with Mr. Lavery during the April 2014 appointment. (A.1273). Mr. Lavery did not receive any diagnosis, treatment, care services, or medication prescribed or recommended by a physician for his disabling condition of malignant melanoma until after his diagnosis on June 19, 2014. (A.1226).

On or about March 26, 2015, Aetna Clinical Consultant Pedro Cortero conducted a claim review with a "pre-existing assessment." (A.1107). The assessment considered Mr. Lavery's office visit of April 25, 2014 and determined, "There is no evidence of a definitive diagnosis and management rendered for his malignant melanoma during the look back period." (A.1107).

On or about that same day, Ms. Leimback wrote an entry, "DBM [that is, Ms. Leimback] *will recommend approval of claim and obtain updates as recommended by clinical*." (A.1108) (emphasis added). On March 27, 2015, Ms. Leimback called Mr. Lavery and told him that his application had been approved. (A.1275). Ms. Leimback also told Mr. Lavery that the clinical reviewer "agreed 100%...that there was no evidence of melanoma present until [Mr. Lavery's] biopsy and diagnosis in June [2014]." (A.1278).

On or about that same day, Aetna obtained a copy of Mr. Lavery's payroll information, which revealed that he was a high earner entitled to a substantial monthly benefit. (A.1302-04). Two days later, on Sunday, March 29, 2015, a different Aetna employee, Kathy Leonard, without any additional medical information or reference to any Aetna guidelines, determined that the Pre-Ex Clause did apply. (A.1110). Her note indicated, "DBM [i.e., Therese Leimback] recommends denial due to pre ex condition." (A.1113). There are no prior entries in the record by Ms. Leimback, however, indicating her recommendation that Mr. Lavery's claim should be denied due the Pre-Ex Clause; on the contrary, the record indicates that Ms. Leimback previously had recommended only that Mr. Lavery's claim be approved. (A.1108).

On March 30, 2015, Ms. Leimback called Mr. Lavery back and said his claim was being denied based on the Pre-Ex Clause. (A.1278). She told him that a new note had come into Aetna, allegedly showing that the red spot on his back had

been present for six months prior to the biopsy. (A.1278). In fact, the claim file demonstrates that Aetna did not receive any new medical information or notes between March 26, 2015 and March 30, 2015. (A.1210).

Aetna sent Mr. Lavery a denial letter on or about March 30, 2015. (A.980-81). Per the letter, Aetna determined that Mr. Lavery had a "pre-existing condition" based on its conclusion that he had "received medical treatment, care, or services for" his malignant melanoma on April 25, 2014. (A.980-81). In fact, Mr. Lavery did not receive medical treatment, care, or services for his malignant melanoma on April 25, 2014. (A.1273, 1276). Mr. Lavery was not even diagnosed with malignant melanoma until June 19, 2014. (A.1277). He began receiving treatment, care, and services for his malignant melanoma only after it was diagnosed. (A.1276-77).

On or about July 22, 2015, Mr. Lavery filed an administrative appeal, requesting a full and fair review of Aetna's denial of his claim. (A.31). On or about August 10, 2015, Ms. Leimback requested a review by Tyler Thornton, a clinical consultant, of the following question: "Is there enough evidence in the clinical documents provided in the appeal to over turn the denial for pre-existing condition?" (A.1122-24). Mr. Thornton concluded that there was an insufficient basis for denying Mr. Lavery's claim based on the pre-existing condition provision. (A.1125).

On or about August 11, 2015, Ms. Leimback entered a note that the "appeal triage determination" was "Claim Reinstated," meaning that Mr. Lavery's appeal should have been allowed. (A.1126-27). On August 14, 2017, Ms. Leimback entered another note with a "Plan of Action" that included "DBM will rec approval and reinstatement. Dis supported and not pre-ex with addl medical rec." (A.1127-28).

On or about September 8, 2015, and without any indication about what prompted the change, Catherine Irelan (whose exact role is unexplained by the record) again reversed Aetna's position by concluding, contrary to the prior entries by Mr. Thornton and Ms. Leimback, that "the condition is pre-ex." (A.1130-31). This change plainly favored Aetna's financial interests, because it paid benefits under the Plan.

On September 9, 2015, Aetna for the first time took the position that the effective date of Mr. Lavery's long term disability coverage was not June 1, 2014, as it had repeatedly indicated to him (A.967, 977, 980), but July 1, 2014. (A.1134). The effective date of coverage is highly significant here: if it was June 1, 2014, then Mr. Lavery's look-back period was March 2014 – May 2014. If it was July 1, 2014, then his look-back period was April 2014 – June 2014. Mr. Lavery was diagnosed with cancer in June 2014, within the new look-back period but outside the original one.

The purported basis for this changed look-back period was a "Summary of Coverage" ("SOC") with an issue date of June 23, 2014 (after Mr. Lavery started working at Restoration Hardware) and a retroactive effective date of May 1, 2014. (A.357). Neither Restoration Hardware – which reported to Aetna that Mr. Lavery's effective date of coverage was June 1, 2014 (A.787) – nor Aetna had relied on this new SOC in connection with Mr. Lavery's claim prior to September 9, 2015.

Aetna issued its final decision on September 11, 2015. (A.989-90). Despite multiple requests by Mr. Lavery for all relevant documents (A.1311-13), there is no evidence that prior to the issuance of Aetna's final decision on September 11, 2015, Mr. Lavery had been told that Aetna considered his effective date of coverage to be July 1, 2014 or that it was relying on the new SOC to deny his claim.

Mr. Lavery was not provided with a copy of the new SOC until on or after September 24, 2015. (A.1194, 1185). Likewise, he did not receive a copy of the Plan document (A.297-365) until after he filed this lawsuit; previously, he only received a copy of the Plan's summary plan description (A.1281-99). The Plan's summary plan description does not vest Aetna with discretion to interpret the Plan (A.1281-99), which is why the Complaint alleges that de novo review is proper.

In its final decision, Aetna told Mr. Lavery, "Since we've made our final decision, no other action will be taken by us." (A.990). Similarly, Aetna informed

Restoration Hardware, "According to the LTD group policy under which your employee is covered, this review is final and not subject to further review." (A.991). As a result, because Mr. Lavery did not learn about the new SOC until Aetna issued its final decision, he never had an opportunity to address it.

## B.     Procedural History

Mr. Lavery filed his Complaint on February 27, 2017. (A.2). Following an initial scheduling conference, the parties engaged in discovery and presented several procedural motions to the Court. (A.5-6). The parties ultimately filed cross-motions for summary judgment. (A.7-8). On August 6, 2018, the Court issued a Memorandum and Order, allowing Mr. Lavery's motion for summary judgment and ordering Aetna to allow his claim for long term disability benefits. (A.9, 116-131). Judgment in Mr. Lavery's favor entered that same day. (A.9, 132).

On August 17, 2018, Mr. Lavery filed a motion to amend the judgment and a petition for attorneys' fees and costs. (A.9, 133-237). Among other things, the motion provided detailed calculations to support an award of prejudgment interest in the amount of $17,123.07. (A.139, 151). In its opposition, Aetna did not challenge Mr. Lavery's calculations – noting, for example, that "[t]he numbers proferred by plaintiff's counsel in his affidavit…regarding plaintiff's net monetary benefit, are more or less accurate" – instead challenging the premise that he was entitled to benefits at all. (A.263-66). On October 16, 2018, the district court

awarded fees to Mr. Lavery, along with prejudgment interest in the amount of $17,123.07. (A.11).

**SUMMARY OF ARGUMENT**

The district court's judgment requires different standards of review. The Court should review Aetna's denial of benefits under an arbitrary and capricious standard of review, just as the district court did, so this issue of law is reviewed de novo. The district court's choice of remedies, however – including its order that Aetna allow Mr. Lavery's claim and its award of prejudgment interest – is entitled to deference and should be reviewed only for an abuse of discretion.

While deferential, the Court's review of Aetna's decision nonetheless should be conducted with heightened scrutiny, because Aetna operated under a structural conflict of interest. Aetna decided who would get benefits, and it paid for those benefits, so it had a built-in incentive to save itself money by denying claims. Aetna's claim file provides no evidence that it took any steps to control that conflict. On the contrary, Aetna's repeated reversals of position about the proper interpretation of the Pre-Ex Clause demonstrate a lack of effective controls to ensure consistent and unbiased decisionmaking.

Aetna's first reason for denying Mr. Lavery's claim was that even though he was not diagnosed with malignant melanoma until June 2014, he sought treatment for a skin condition in April 2014, during the three-month look-back period of March 2014 – May 2014. Aetna initially determined that the Pre-Ex Clause did not

9

bar his claim; it then reversed course, finding that the clause did apply; it then changed its position again, determining that Mr. Lavery's claim should be allowed; it then reversed itself one more time, deciding that the clause did apply. These reversals were not rooted in any fixed or objective guidelines or policies about how the Pre-Ex Clause should be interpreted; they were arbitrary and capricious changes, reflecting conflicting interpretations by different employees at Aetna. The designated claim experts and the assigned Disability Benefits Manager repeatedly interpreted the Plan in Mr. Lavery's favor, only to be overruled by individuals whose roles or authority is hazy, at best. Aetna's unprincipled decisionmaking is precisely the type of arbitrary and capricious conduct that violates ERISA, particularly where the end result of that standardless conduct is a self-interested denial of benefits.

Aetna's second reason for denying Mr. Lavery's claim fares no better. In its final decision, to which Mr. Lavery had no right to respond, Aetna claimed for the first time that his look-back period was actually April 2014 – June 2014, a period that included his June 2014 diagnosis. In fact, this new look-back period did not apply to Mr. Lavery for multiple reasons, but he was unable to provide any evidence or basis to establish why. Aetna's active misleading of Mr. Lavery about the proper look-back period, along with its untimely disclosure, precludes it from relying on this previously-undisclosed rationale.

After ruling that Aetna violated ERISA, the district court ordered Aetna to allow Mr. Lavery's claim, finding that remedy to be more appropriate than remanding the claim back to Aetna for further review. That discretionary choice of a remedy was directly in line with the settled law of this Circuit, and there is no basis for reversing it. Likewise, the district court's award of prejudgment interest was a proper application of discretion that should not be disturbed.

## ARGUMENT

**1.  Standard of review.**

The different issues before this Court warrant different standards of review. First, as to the district court's legal ruling that Aetna's application of the pre-existing condition clause was arbitrary and capricious, the standard of appellate review is de novo. *Bard v. Boston Shipping Ass'n*, 471 F.3d 229, 235 (1st Cir. 2006). As a result, this Court should review Aetna's actions under an arbitrary and capricious standard, just as the district court did. *Buffonge v. Prudential Ins. Co. Of Am.*, 426 F.3d 20, 28 (1st Cir. 2005). Although the parties filed cross motions for summary judgment, it is well recognized in ERISA cases that "summary judgment is merely a vehicle for deciding the case," and neither party is entitled to the usual inferences applicable at the summary judgment stage. *Bard*, 471 F.3d at 235. As discussed in more detail in the next section, however, Aetna's structural conflict of interest warrants closer scrutiny by this Court. *Metro. Life Ins. Co. v. Glenn*, 554

U.S. 105, 115-19 (2008); *Denmark v. Liberty Life Assur. Co. of Boston,* 566 F.3d 1, 9 (1st Cir. 2009).

Second, a district court's choice of remedies in an ERISA case is not reviewed de novo; it is reviewed, instead, for an abuse of discretion. *Cook v. Liberty Life Assur. Co. of Boston*, 320 F.3d 11, 24 (1st Cir. 2003). That deferential standard applies to the district court's ruling that Aetna allow Mr. Lavery's claim for benefits. Indeed, this Court explicitly has recognized that "[o]nce a court finds that an administrator has acted arbitrarily and capriciously in denying a claim for benefits, the court can either remand the case to the administrator for a renewed evaluation of the claimant's case, or it can award a retroactive reinstatement of benefits." *Id*. Likewise, a deferential standard of review applies to the district court's award of prejudgment interest. *Radford Tr. v. First Unum Life Ins. Co. of Am.*, 491 F.3d 21, 23–24 (1st Cir. 2007) (In ERISA cases, a "district court has broad discretion both to determine whether to award prejudgment interest and to determine the parameters of such an award.").

## 2.     Aetna had a structural conflict of interest, so its decision must be reviewed with closer scrutiny.

In ERISA cases, a "structural conflict" exists "whenever a plan administrator…is in the position of both adjudicating claims and paying awarded benefits." *Denmark,* 566 F.3d at 7, *citing Glenn*, 554 U.S. at 112. There is no dispute that such a conflict exists here, where Aetna had two competing roles: it

adjudicated Mr. Lavery's claim and was liable for paying his benefits. Both the Supreme Court and this Court have held that such an inherent conflict warrants closer scrutiny by a reviewing court. *Glenn*, 554 U.S. at 115-19; *Denmark,* 566 F.3d at 9. As the Supreme Court recognized, that scrutiny is warranted given that an administrator's "fiduciary interest may counsel in favor or granting a borderline claim while its immediate financial interest counsels to the contrary." *Glenn*, 554 U.S. at 112.

When providing closer scrutiny, courts should consider "a litany of relevant factors." *Denmark*, 566 F.3d at 8. One significant factor is the "degree of closeness" or the "closeness of the case." *Id*. (citation omitted). It is beyond real dispute that this case presents a close call, as forcefully demonstrated by the stark disagreement among Aetna's staff about whether Mr. Lavery's claim should be allowed under the Pre-Ex Clause. At various times, three Aetna employees, including two clinical consultants (A.1107, 1125) and the assigned Disability Benefits Manager (A.1108, 1126-28), concluded that Mr. Lavery's claim was not barred by the Pre-Ex Clause; other Aetna employees reached a contrary conclusion (A.1110, 1130-31). If this were an easy case, there would not be such divergent views.

Another significant factor is whether an administrator took any steps to mitigate its structural conflict of interest. In fact, "courts are *duty-bound* to inquire into what steps a plan administrator has taken to insulate the decisionmaking

process against the potentially pernicious effects of structural conflicts." *Id*. at 9 (emphasis added). *See also Bard*, 471 F.3d at 240 ("Also relevant is the Plan's failure to provide a variety of procedural safeguards designed to ensure the objectivity of its administrative appellate review."). Here, the administrative record lacks any evidence (such as copies of claim policies or procedures) about what measures Aetna took to mitigate or control its structural conflict of interest. It is unknown from the administrative record, for example, if the Aetna employees who overruled the two experts and the Disability Benefits Manager were evaluated or compensated, directly or indirectly, based on benefits determinations or the amount of benefits paid. Aetna's failure to include this information in the claim file disregarded this Court's explicit warning to administrators about their obligation to do so. *Denmark*, 566 F.3d at 10 ("In future cases, plan administrators, aware of *Glenn,* can be expected as a matter of course to document the procedures used to prevent or mitigate the effect of structural conflicts. That information *will be included* in the administrative record and, thus, will be available to a reviewing court.") (emphasis added). Inexplicably, Aetna did not heed that admonition. On the contrary, it actively resisted further discovery into the issue. (A.5-6).[1] Aetna cannot deflect responsibility onto Mr. Lavery for this lack of evidence, because it is well established that it was Aetna's burden to include any such documents in the

---

[1] Mr. Lavery moved to compel limited deposition testimony to fill in gaps or unexplained aspects of the claim file. (ECF No. 25). Aetna vigorously opposed the motion (ECF No. 28), which was then denied by a Magistrate Judge (A.6).

claim file. *See, e.g., Bard*, 471 F.3d at 231 n.2 ("To the extent any relevant documents are missing, it was the Plan's responsibility, as keeper of the records, *see* 29 U.S.C. § 1059(a)(2), to provide those documents.").

A conflicted administrator's development and implementation of procedures to ensure consistent, accurate, and neutral decisions should be evident from how a claim is handled – that is, it will be handled in a competent, consistent, and predictable fashion. Conversely, the lack of such procedures will manifest in a different way – that is, the claim will be subject to changing positions and inconsistent standards, indicating a lack of controls and creating a heightened risk for self-interested determinations. For example, when affirming a lower court's conclusion that an administrator acted unreasonably, the Supreme Court noted evidence about the administrator's "procedural unreasonableness" and the fact that the administrator's "seemingly inconsistent positions were…financially advantageous." *Glenn*, 554 U.S. at 118.

As discussed in more detail below, Aetna's handling of Mr. Lavery's claim was characterized by misrepresentations, unexplained changes of positions, and confusion as to applicable standards. Combined with its undisputed and uncontrolled structural conflict of interest, those shortcomings warrant a determination that Aetna's denial of Mr. Lavery's claim should be reversed.

**3.      Aetna's denial of benefits based on the initial look-back period was arbitrary and capricious.**

A court ordinarily reviews an administrator's final decision, *Terry v. Bayer Corp.*, 145 F.3d 28, 35 (1st Cir. 1998), but there are two reasons to consider Aetna's initial denial of benefits along with its final denial. First, Aetna relied on its initial denial as an alternative ground when issuing its final decision, so it constitutes part of Aetna's final decision. (A.989). Second, Aetna's shifting and inconsistent decisionmaking – which demonstrates, among other things, the lack of controls that made its structural conflict of interest a significant factor – is shown through an examination of its entire claim process.

As a threshold matter, it is important to correct a glaring error in Aetna's position on appeal. The question in this case is not, as Aetna repeatedly asserts, whether Mr. Lavery had malignant melanoma during the applicable look-back period. (Appellants' Brief, pp.5, 8, 19, 25).[2] The correct question turns, as it must, on the specific language of the Plan – here, whether Aetna's application of the Pre-Ex Clause was arbitrary and capricious.

The Pre-Ex Clause states as follows:

Long Term Disability Coverage does not cover any disability that starts during the first 12 months of your current Long Term Disability

---

[2] Aetna incorrectly argues, for example, that "[i]t was Lavery's burden to demonstrate entitlement to benefits under an ERISA plan…*by showing that he was free from melanoma during the look-back period*…." (Appellants' Brief, p.25) (emphasis added).

> Coverage, if it is caused or contributed to by a 'pre-existing condition."
>
> A disease or injury is a pre-existing condition if, during the 3 months before the date you last became covered:
>
> - it was diagnosed or treated; or
> - services were received for the disease or injury; or
> - you took drugs or medicines prescribed or recommended by a physician for that condition.

(A.374). This provision does not say, as it plainly could have, that "a disease or injury is a pre-existing condition if, during the 3 months before the date you last became covered, *you suffered from the condition*." A pre-existing condition is defined, instead, by reference to medical treatment for it. The flaw with Aetna's position is easily demonstrated. Even if it were *undisputed* that Mr. Lavery had malignant melanoma during the look-back period, it is plain that the Pre-Ex Clause would not apply if none of the three elements of a "pre existing condition" were satisfied – if, for example, the melanoma had not been diagnosed as of that period, Mr. Lavery had no medical visits during that period, and he was taking no drugs or medicines during that period. As a result, the proper question is not whether Mr. Lavery had malignant melanoma during the look-back period, it is whether Aetna's application of the Pre-Ex Clause was arbitrary and capricious.

The claim file demonstrates that Aetna had no consistent interpretation of the Pre-Ex Clause. On or about March 21, 2015, as part of its initial claim

evaluation, Aetna wrote to Mr. Lavery and advised him, among other things, as follows:

> **According to the information in your file, your coverage under the Restoration Hardware, Inc. plan became effective on 06/01/2014 and you have claimed disability as of 9/30/2014. Your coverage was in effect for less than 12 consecutive months as of 9/30/2014, thus we must determine whether you received medical treatment/services, or were prescribed medication during the three month period between 3/1/2014 and 5/31/2014.**

(A.976-77) (emphasis in original). A heading on the first page of that letter further emphasized (in all caps and bold) the purported look-back period: "**NOTE: CORRECTED PERIOD FOR PRE-EXISTING REVIEW: 3/1/2014 AND 5/31/2014**." (A.976) (emphasis in original).

Mr. Lavery had an office visit with his primary care physician, Anthony Lopez, M.D., on April 25, 2014, during which he asked about a lesion on his back. (A.1272-73). Dr. Lopez suspected the lesion could be basal cell carcinoma (and thus he did not diagnose the malignant melanoma), so he recommended that Mr. Lavery consult with a dermatologist. (A.1272-73). He did not provide any treatment or prescribe any medications. (A.1273). Mr. Lavery did not receive any diagnosis, treatment, care services, or medication for his malignant melanoma until after his diagnosis on June 19, 2014. (A.1226).

On Thursday, March 26, 2015, Aetna Clinical Consultant Pedro Cortero conducted a "pre-existing assessment." (A.1107). The assessment considered Mr. Lavery's office visit of April 25, 2014 and properly determined, "There is no

evidence of a definitive diagnosis and management rendered for his malignant melanoma during the look back period." (A.1107). On or about that same day, Disability Benefits Manager Therese Leimback, the decisionmaker for Mr. Lavery's claim, wrote an entry, "DBM [that is, Ms. Leimback] will recommend approval of claim and obtain updates as recommended by clinical." (A.1108).

On Friday, March 27, 2015, Ms. Leimback called Mr. Lavery and told him that his application had been approved. (A.1278). Mr. Lavery's sworn account of what he was told is in the administrative record, uncontradicted by any rebuttal from Ms. Leimback. Aetna's repeated suggestion to this Court that Aetna never communicated to Mr. Lavery that his claim was being allowed (Appellants' Brief, pp.10, 19) is manifestly inaccurate and misleading.

On Sunday, March 29, 2015, a different Aetna representative, Kathy Leonard, without any additional medical information or reference to any Aetna standards or guidelines, evidently concluded that the Pre-Ex Clause *did* apply. (A.1110). Although her note states that "DBM [i.e., Therese Leimback] recommends denial due to pre ex condition" (A.1113), there are no entries in the record *by Ms. Leimback*, prior to that time, indicating that she recommended denial due the Pre-Ex Clause prior to Ms. Leonard's reversal; on the contrary, the record indicates that she had recommended that Mr. Lavery's claim be approved. (A.1108).

On Monday, March 30, 2015, following Ms. Leonard's reversal of Ms. Leimback's decision, Ms. Leimback called Mr. Lavery back and said his claim was being denied based on the Pre-Ex Clause. (A.1278). She also told him, falsely, that a new note had come into Aetna, allegedly showing that the red spot on his back had been present for six months prior to the biopsy. (A.1278). In fact, the record demonstrates that Aetna did not receive any new medical information or notes between March 26, 2015 and March 30, 2015. (A.1210). Aetna sent Mr. Lavery its denial letter on or about March 30, 2015. (A.980-81).

On or about July 22, 2015, Mr. Lavery filed an administrative appeal, requesting a full and fair review of Aetna's denial of his claim. (A.31). On August 10, 2015, Ms. Leimback requested a review by Tyler Thornton, another clinical consultant, of the following question: "Is there enough evidence in the clinical documents provided in the appeal to over turn the denial for pre-existing condition?" (A.1122-24). Mr. Thornton concluded, like Mr. Cortero had before, that there was an insufficient basis for denying Mr. Lavery's claim based on the Pre-Ex Clause. (A.1125).

On August 11, 2015, Ms. Leimback entered a note that the "appeal triage determination" was "Claim Reinstated," meaning that Mr. Lavery's appeal was going to be allowed. (A.1126-27). On August 14, 2017, Ms. Leimback entered another note with a "Plan of Action" that included "DBM will rec approval and reinstatement. Dis supported and not pre-ex with addl medical rec." (A.1127-28).

For a second time, therefore, a clinical review consultant and Ms. Leimback determined that the Pre-Ex Clause did not apply to Mr. Lavery's claim. That should have been the end of the appeal, and it should have been resolved in Mr. Lavery's favor.

On or about September 8, 2015, however, and without any indication about what prompted the change, Catherine Irelan (whose role and authority is not explained in the claim file) again reversed Aetna's position by concluding, directly contrary to the prior entries, that "the condition is pre-ex." (A.1130-31). This change favored Aetna's financial interests.

This chronology indicates that Aetna's structural conflict played a role in its denial of Mr. Lavery's claim. Aetna's own clinical consultants, as well as its assigned Disability Benefits Manager, all concluded that the Pre-Ex Clause did not apply to Mr. Lavery's claim. Two other Aetna employees abruptly overruled those conclusions. Those reversals were not justified by any new or different information about Mr. Lavery's medical treatment or by reference to any Aetna guidelines. On the contrary, the only new information that preceded the first change of position was information about Mr. Lavery's relatively high salary (A.1302-04), which meant that his benefit payments (for which Aetna was liable) would be significant.

Even in the absence of a structural conflict of interest, an administrator's otherwise unexplained reversal of position warrants judgment in a claimant's favor, because it constitutes arbitrary and capricious decisionmaking. *See, e.g.,*

*Miller v. American Airlines, Inc.*, 632 F.3d 837, 848 (3d Cir. 2011) ("administrator's reversal of its decision to award a claimant benefits without receiving any new medical information to support this change in position is an irregularity that counsels towards finding an abuse of discretion"). It would be one thing if Aetna's reversal of position were based on its receipt of new "meaningful evidence," but that is not the case here. *Id*. at 849, *citing McOsker v. Paul Revere Life Ins. Co.,* 279 F.3d 586, 589 (8th Cir.2002) (reversal of position supported arbitrary and capricious finding where information used to terminate benefits did "not vary significantly from the [previous] opinions") (other citations omitted).

Aetna cannot prevail by arguing that its final decision rests on a reasonable interpretation of the Pre-Ex Clause. After all, the test for an arbitrary and capricious decision in an ERISA case is not whether a rational administrator *could have* reached the final result. *Buffonge*, 426 F.3d at 30-31 (noting that "[t]his argument ignores the requirement that the decision must not be arbitrary").[3] The actual process matters, so it is important to consider evidence about how the final decision was reached. *Id*. That is because "unprincipled decision-making" is "arbitrary," even if the final decision might have a theoretically rational basis. *Id*. at 30 (internal quotation marks omitted). To that end, this Court has rejected an

---

[3] In ERISA cases, the First Circuit has used the term "unreasonable" in a manner that is synonymous with "arbitrary and capricious." *See, e.g., Cook*, 320 F.3d at 19 (1st Cir. 2003), *quoting Pari-Fasano v. ITT Hartford Life & Accident Is. Co*., 230 F.3d 415, 419 (1st Cir. 2000).

argument that "an administrator's arbitrary analysis should be ignored if the end result – denial of benefits – can nonetheless be saved by a single valid piece of evidence that supports it." *Id. See also Miller v. American Airlines, Inc.*, 632 F.3d 837, 848 (3d Cir. 2011) ("administrator's reversal of its decision to award a claimant benefits without receiving any new medical information to support this change in position is an irregularity that counsels towards finding an abuse of discretion").

In this appeal, Aetna attempts to characterize the Pre-Ex Clause as having only one reasonable interpretation – that is, that the provision bars any claim arising from a condition that *existed* during the look-back period[4] – but that attempt runs up against two problems. In the first place, the inconsistent positions of its own staff as to how to interpret the Pre-Ex Clause demonstrates that the language was subject to different interpretations. In the second place, this Court has recognized the inherent ambiguity of this type of clause, which might more accurately be described as a "recent treatment" clause. *Hughes v. Boston Mut. Life Ins. Co.*, 26 F.3d 264, 269-70 (1st Cir. 1994).

---

[4] Aetna states, for example, "It may be argued that mindless reference to the literal terms of the exclusion could result in it not applying. However, such an approach would lead to the unreasonable conclusion that one could seek treatment for a condition, as is the case here, during a pre-existing condition period, but not have the condition deemed a pre-existing condition because a doctor failed to immediately render the correct diagnosis or treatment for that specific condition." (Appellants' Brief, p.28).

Aetna has an undisputed right to interpret ambiguous plan language, but only if it does so *in a reasonable manner*. It could have done so by, for example, adopting and following explicit guidelines as to the proper application of the Pre-Ex Clause. But here, as the claim file makes plain, Aetna did not have or follow a consistent interpretation of the Pre-Ex Clause. Instead, it arbitrarily and capriciously shifted back and forth between interpretations, first adopting an interpretation that favored Mr. Lavery, then reversing course, then reading the language in his favor again, then reversing course once more, ultimately settling on an interpretation that favored its own financial interest.

In short, given that the application of the Pre-Ex Clause to Mr. Lavery's claim was a close call under the original look-back period, given that Aetna's structural conflict of interest was not controlled by any policies or procedures, and given that Aetna's vacillations were otherwise unexplained, Aetna's self-interested reversal of positions under the original look-back period cannot stand.

**4.  Aetna's denial of benefits based on a new look-back period was also unreasonable, because it relied on a previously undisclosed change of plan terms and because Mr. Lavery never had an opportunity to respond to Aetna's reliance on those new terms.**

On September 9, 2015, Aetna recognized for the first time that the effective date of Mr. Lavery's long term disability coverage was not June 1, 2014, as it repeatedly had indicated to him (A.967, 977, 980), but July 1, 2014 (A.1134). Two days later, on September 11, 2015, Aetna sent Mr. Lavery its final decision, relying

on both the original look-back period *and* the new look-back period. (A.989-90). This was the first time Mr. Lavery learned about the new SOC and a different look-back period.

Aetna's last-minute reliance on the new SOC violated ERISA regulations and prejudiced Mr. Lavery. When reviewing a benefits decision, courts must consider "ERISA's requirement that plans provide clear notice to potential claimants of their substantive and procedural rights." *Bard*, 471 F.3d 237. After all, "[t]he need for clear notice pervades the ERISA regulatory structure." *Id*. For example, "one of the key purposes of a [summary plan description] is to state in normal everyday language both what the eligibility requirements are, and what procedures the claimant must follow." *Id., citing* 29 U.S.C. § 1022(a).

Under 29 C.F.R. § 2560.503-1(h)(4)(ii), an administrator cannot rely on a new or additional rationale in a final decision without providing advance notice to the claimant, thereby allowing the claimant a reasonable opportunity to respond.[5]

---

[5] That section reads, in full, as follows:

  **(4)** *Plans providing disability benefits.* The claims procedures of a plan providing disability benefits will not, with respect to claims for such benefits, be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless, in addition to complying with the requirements of paragraphs (h)(2)(ii) through (iv) and (h)(3)(i) through (v) of this section, the claims procedures -

  **(i)** Provide that before the plan can issue an adverse benefit determination on review on a disability benefit claim, the plan administrator shall provide the claimant, free of charge, with any new or additional evidence considered, relied upon, or generated by the plan, insurer, or other person making the

There is no dispute here that Mr. Lavery had neither advance notice of the new look-back period nor a reasonable opportunity to respond.

Aetna also violated ERISA's notice requirements with respect to plan amendments. The new SOC was not issued until June 23, 2014. (A.357). But by that point, Mr. Lavery already was covered under the terms of the prior SOC, because his coverage under that prior SOC was effective June 1, 2014. Because he already was entitled to coverage as of June 1, 2014, Aetna could not change his effective date of coverage in a manner that diminished his rights, unless it adhered to all requirements for doing so. *Coffin v. Bowater Inc.*, 501 F.3d 80, 85-87 (1st Cir. 2007). One requirement for such a change is that it be communicated to participants "no later than 210 days after the end of the plan year in which the amendment is adopted." *Agosto-Ramos v. Puerto Rico Tel. Co.*, 743 F. Supp. 2d 30, 38 (D.P.R. 2010), *citing* 29 U.S.C. § 1024(b)(1). The Plan year begins on July

benefit determination (or at the direction of the plan, insurer or such other person) in connection with the claim; such evidence must be provided as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required to be provided under paragraph (i) of this section to give the claimant a reasonable opportunity to respond prior to that date; and

**(ii)** Provide that, before the plan can issue an adverse benefit determination on review on a disability benefit claim based on a new or additional rationale, the plan administrator shall provide the claimant, free of charge, with the rationale; the rationale must be provided as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required to be provided under  paragraph (i) of this section to give the claimant a reasonable opportunity to respond prior to that date.

1st (A.340), so Mr. Lavery should have been notified of the amended terms within 210 days of July 1, 2014, or no later than January 27, 2015. Mr. Lavery was not notified of the new terms until he received Aetna's final decision in September 2015, nine months later.

Prejudice results when a claimant reasonably relies on incomplete or incorrect information. *Bard*, 471 F.3d 237. Here, when submitting his appeal, Mr. Lavery reasonably relied on Aetna's prior position that the relevant look-back period was March 2014 – May 2014. That is what he was told during his claim process, with Aetna explicitly emphasizing the relevant look-back period. (A.976) ("**NOTE: CORRECTED PERIOD FOR PRE-EXISTING REVIEW: 3/1/2014 AND 5/31/2014**.") (emphasis in original). And that is what he was told in Aetna's initial denial of his claim. (A.980) ("The 3 month period prior to the effective date of your long term disability coverage is March 1, 2014 through May 31, 2014.").

Mr. Lavery's appeal, therefore, was premised on his understanding that the proper look-back period was March 2014 – May 2014. If he had known that Aetna was going to change the look-back period to April 2014 – June 2014, the basis for his appeal plainly would have been different. He was diagnosed with malignant melanoma in June 2014 (squarely within the new look-back period), so it would have made no sense for him to argue (as he did, in reliance on Aetna's previously-stated look-back period) that the April 2014 visit to Dr. Lopez did not fall within the Plan's definition of a "pre-existing condition."

Mr. Lavery's argument would have focused, instead, on the applicability of and language in the new SOC. Under that language, and given the circumstances of his employment by Restoration Hardware, his "Eligibility Date" would have been different, because he was an "associate" of Restoration Hardware (the relevant term in the new SOC, A.1185) before his reported "date of hire" of May 12, 2014. Likewise, the Plan provides that "[a]n increase in any required period of service will apply only to an employee who enters service on or after the effective date of the increase." (A.335). Mr. Lavery would have offered evidence that he "entered service" with Restoration Hardware long before the putative effective date of the new SOC. This Court has recognized that the existence of a potentially substantial argument that was not made based on a lack of notice is a relevant consideration when evaluating prejudice. *Bard*, 471 F3d 243 n.20.

In addition, as the district court recognized, if Mr. Lavery had timely notice of the new look-back period, he could have waited until after the new look-back period had elapsed (which would have entailed a wait of less than two weeks) before seeking treatment, as he had every right to do under the terms of the plan. (A.129-30). More specifically, if his diagnosis had been in the first part of July 2014 instead of on June 19, 2014 (A.1226), he would have been diagnosed and treated outside of the second look-back period.

Aetna's claim that it shoulders no responsibility for the mistaken look-back period is disingenuous. It issued the new SOC (A.355-61), so it had no excuse for

its failure to apply it earlier. Indeed, there is a pointed irony in Aetna's position about what is fair and appropriate in this case. On the one hand, it insists that it should not be bound by Restoration Hardware's allegedly mistaken statement that Mr. Lavery's effective date of coverage was June 1, 2014. The reality, according to Aetna, is that his effective date of coverage under the new SOC was July 1, 2014, and it should be permitted to rely on that reality. At the same time, however, Aetna insists that Mr. Lavery cannot challenge Restoration Hardware's statement that his "date of hire" was May 12, 2014, regardless of whether that statement was correct as a matter of law or fact.

It is appropriate for a reviewing court to "invoke [its] equitable and common law powers to prevent a plan from taking actions, even in good faith, which have the effect of 'sandbagging' claimants." *Bard*, 471 F.3d at 244. One such remedy, adopted repeatedly by this Court, is to bar an administrator from relying on a rationale that a claimant "had been unable to effectively challenge…during the administrative process." *Id., citing Glista v. Unum Life Ins. Co. of Am.*, 378 F.3d 113, 128-132 (1st Cir. 2004) (ERISA's goals "are undermined where plan administrators have available sufficient information to assert a basis for denial of benefits, but choose to hold that basis in reserve rather than communicate it to the beneficiary. Such conduct prevents ERISA plan administrators and beneficiaries from having a full and meaningful dialogue regarding the denial of benefits."). This Court should do likewise, because Mr. Lavery has been prejudiced in the

same general manner as the claimants in *Bard* and *Glista* – that is, he has been prejudiced by his inability to proffer evidence in response to Aetna's newly-articulated rationale.

Courts in other jurisdictions have reached similar results. For example, in *Saffron v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863 (9th Cir. 2008), the administrator relied on a new reason when issuing its final decision, just as Aetna did here. *Id*. at 871. In addressing this issue, the court noted that "an administrator that adds, in its final decision, a new reason for denial, a maneuver that has the effect of insulating the rationale from review, contravenes the purpose of ERISA." *Id*. at 872 (citation and internal quotation marks omitted). The belated reliance on a new reason takes on added significance when, as in this case, there is a structural conflict of interest. *Id*. ("After all, coming up with a new reason for rejecting the claims at the last minute suggests that the claim administrator may be casting about for an excuse to reject the claim rather than conduct an objective evaluation.") (citation omitted).

5.   **The district court did not abuse its discretion when ordering Aetna to allow Mr. Lavery's claim.**

In this Circuit, "[o]nce a court finds that an administrator has acted arbitrarily and capriciously in denying a claim for benefits, the court can either remand the case to the administrator for a renewed evaluation of the claimant's case, or it can award a retroactive reinstatement of benefits." *Cook*, 320 F.3d at 24.

The district court opted for the latter remedy, explaining the basis for its decision. (A.129-31).

Aetna now objects, claiming that it never had an opportunity to determine whether Mr. Lavery was disabled. That claim fails, for at least three reasons. First, it is demonstrably false, because Aetna did find that Mr. Lavery was disabled. The claim file indicates that Aetna was going to allow Mr. Lavery's claim based, among other things, on its finding that his disability was "supported." (A.1128) ("DBM will rec[commend] approval and reinstatement. *Dis[ability] supported* and not pre-ex with add[itiona]l medical rec[ords]") (emphasis added). Indeed, Mr. Lavery had an objectively-verifiable diagnosis of "Stage III malignant melanoma" and was "undergoing Interferon infusions," which had "known side effects of severe fatigue, low blood counts, [and] abnormal liver functions." (A.1124). Aetna already had found him disabled when awarding him short term disability benefits. (A.23). When Aetna later decided to deny his claim, that denial was based solely on the Pre-Ex Clause, with no indication that it was questioning his obvious disability. (A.1139).

Second, Aetna was required to notify Mr. Lavery at the time of its final decision if it was denying his claim based on a finding that he was not disabled. *See, e.g., Lauder v. First Unum Life Ins. Co*., 284 F.3d 375, 380-82 (2d Cir. 2002) (insurer waived defense that claimant was not disabled where it failed to include that reason at time of denial or termination of claim). If the law were otherwise, an

administrator could engage in an endless cycle of denials, relying on new reasons each cycle and resulting in lengthy and burdensome delays as each new reason wound its ways through the judicial review process. *See, e.g., Beauvais v. Citizens Financial Group, Inc.*, 418 F. Supp. 2d 22, 32 (D.R.I. 2006) ("If the matter were simply remanded to the administrator for reconsideration, the further delay would unjustly penalize the claimant for the administrator's unreasonable denial of benefits and the administrator would have no incentive to refrain from unreasonably denying claims in the future.").

Third, it would be unfair and inequitable to Mr. Lavery to delay his benefits further by requiring him to make a retroactive demonstration of his disability. This Court addressed the same issue in *Cook*. After the insurance company's termination of benefits was deemed arbitrary and capricious, the company argued that there was "no evidence of [Plaintiff's] disability status after October 1998, when it terminated her disability benefits, and hence no basis for awarding her disability benefits past that date." *Cook*, 320 F.3d at 24. This Court squarely rejected that argument:

> the absence of information about [Plaintiff's] disability status resulted directly from [the insurer's] arbitrary and capricious termination of her benefits. As a recipient of disability benefits, [Plaintiff] was under a continuing obligation to adduce proof of her disability pursuant to the long-term disability plan. Once [the insurance company] terminated her benefits, she was no longer obliged to update [the company] on her health status. It would be patently unfair to hold that an ERISA plaintiff has a continuing responsibility to update her former insurance company and the court on her disability during the pendency of her internal appeals and litigation, on the

off chance that she might prevail in her lawsuit. Moreover, as the district
court notes in its decision, reconstruction of the evidence of disability during
the years of litigation could be difficult for a recipient of long-term disability
benefits wrongly terminated from a plan.

*Id*. at 24–25. *See also Figueiredo v. Life Ins. Co. of North America*, 709 F. Supp.

2d 144, 156 (D.R.I. 2010) (retroactive reinstatement to date of judgment is

appropriate "where there was no evidence in the record to support a termination or

denial of benefits," and holding that plaintiff was entitled to retroactive award of

all back benefits "and, unless she fails to demonstrate her disability in the future,

on a continuing basis"). The same analysis applies where an insurer claims – as

Aetna does here – that it needs to look back and determine whether a claimant is

entitled to disability under a second ("any occ") phase, which begins after 24

months of disability. *See, e.g., Gross v. Sun Life Assurance Co. of Canada*, 2016

WL 10747783, at *1 (D.Mass. July 13, 2016) (court rejected insurer's argument

that it had the right to determine retroactively whether claimant was disabled under

"any occupation" standard that became applicable after first two years of

disability)

     As a result, Aetna cannot claim that Mr. Lavery retroactively has to prove

his entitlement to benefits from the date of its denial until the Court's judgment.

That would be "patently unfair" to Mr. Lavery, both because he would have to

reconstruct his evidence of disability and because it would result in further delays

(including, potentially, delays caused by further requests for judicial review). It has

now been about four years since Mr. Lavery last received any benefit payments from Aetna. Other than its misplaced assertion that Mr. Lavery is not entitled to back benefits, Aetna did not otherwise dispute the calculation of those benefits when it had an opportunity to do so. (A.263-66). Aetna can, of course, review his claim once he is reinstated to determine whether he remains eligible for *future* benefits, but Mr. Lavery should not be required to re-litigate his entitlement to back benefits.

**6. The district court did not abuse its discretion when awarding prejudgment interest.**

When challenging the district court's award of prejudgment interest, Aetna again disregards the law of this Circuit, which vests district courts with "broad discretion both to determine whether to award prejudgment interest and to determine the parameters of such an award." *Radford Tr.*, 491 F.3d at 23–24. Aetna's assertion that the district court's award was "inexplicable" (Appellants' Brief, p.35) is easily refuted. In his motion for prejudgment interest, Mr. Lavery detailed the calculations underlying the exact amount awarded by the district court, $17,123.07. (A.11, 139, 151). Aetna had an opportunity to challenge those calculations, but it offered no basis for doing, arguing only that *any* award was improper. (A.263-66).

## **CONCLUSION**

For the foregoing reasons, Mr. Lavery respectfully requests that this Court affirm the district court's judgment.

Respectfully submitted,
JOHN LAVERY

By his attorneys,

/s/ Stephen Churchill
Stephen Churchill (#30464)
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
(617) 607-3260
steve@fairworklaw.com

# CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

    1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 9,240 words, according to the Microsoft Office Word for Mac "Word Count" function.

    2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word for Mac with Times New Roman, 14-point type space.

/s/ Stephen Churchill
Stephen Churchill

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 25(e), I certify that on January 7, 2019, I served a true copy of this document by electronic filing on all registered parties, including counsel for Appellants:

Kenneth J. Kelly, Esq.
Epstein Becker & Green, P.C.
250 Park Avenue
New York, NY 10177
KKelly@ebglaw.com


/s/ Stephen Churchill
Stephen Churchill